UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

DEANDRE DeSHAWN CARTER,

               Petitioner,            Case No. 1:08-cv-849

v.                                 Honorable Janet T. Neff

BLAINE LAFLER,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254. After a jury trial in Muskegon County Circuit Court, Petitioner was convicted of possession

with intent to deliver 450 or more but less than 1,000 grams of cocaine, MICH. COMP. LAWS

§ 333.7401(2)(a)(ii), and possession of a firearm by a person convicted of a felony, MICH. COMP.

LAWS § 750.224f. On January 23, 2004, the trial court sentenced Petitioner as a third habitual

offender, MICH. COMP. LAWS § 769.11, to respective prison terms of 17 to 45 years and 18 months

to 10 years. In his *pro se* amended petition (docket #5)[1], Petitioner raises five grounds for habeas

corpus relief, as follows:

      I.      PETITIONER'S CONVICTION MUST BE REVERSED BECAUSE
             PETITIONER NEVER ACTUALLY OR CONSTRUCTIVELY

---

[1]On December 2, 2008, Petitioner filed an amended petition (docket #5) without a signature page. On January 14, 2009, the Court ordered Respondent to file an answer to Petitioner's amended application for habeas corpus relief (docket #6). To cure his deficiency, Petitioner filed another amended petition (docket #8) on February 19, 2009. The February 19, 2009 amended petition is a carbon copy of the December 2, 2008 amended petition (docket #5) except for the signature page. Petitioner, who is represented by an attorney, signed the signature page. Because the petitions are exactly the same and Respondent answered the December 2, 2008 amended petition, I will reference Petitioner's December 2, 2008 amended petition in this report and recommendation.

POSSESSED THE BAGGED NARCOTICS [THAT] THE OFFICER TOSSED ON HIS LAP BEFORE THE SIGNAL WAS GIVEN TO ARREST PETITIONER, WHEN PETITIONER NEVER ACKNOWLEDGED THE CONTENTS OF THE BAGS NOR AT ANY TIME EXERCISE[D] DOMINION OR CONTROL OVER THE BAGGED NARCOTICS, DOES PETITIONER'S CONVICTION CONSTITUTE A FOURTEENTH AMENDMENT VIOLATION UNDER BOTH THE MICHIGAN AND UNITED STATES CONSTITUTIONS, AND THE MICHIGAN COURTS['] DECISION RESULT[ED] IN AN UNREASONABLE APPLICATION OF ESTABLISHED SUPREME COURT PRECEDENT.

II.     PETITIONER'S CONVICTION ON THE COUNT OF FELON-IN-POSSESSION OF A FIREARM SHOULD BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THIS OFFENSE AND THE COURT OF APPEALS['S] DECISION WAS CONTRARY TO UNITED STATES SUPREME COURT PRECEDENT.

III.     PETITIONER WAS DENIED A FAIR TRIAL IN THE JOINING OF THREE SEPARATE AND UNCONNECTED CASES.

IV.     PETITIONER [] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO SEEK SUPPRESSION OF OTHER ACTS EVIDENCE AND FAILED TO MOVE FOR SEVER[A]NCE OF THE CHARGES PURSUANT TO MCR 6.120(B).

V.     PETITIONER [] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL WHEN APPELLATE COUNSEL FAILED, FOR NO APPARENT STRATEGIC REASON, TO RAISE ISSUES THAT WERE BOTH "OBVIOUS AND SIGNIFICANT" ON DIRECT APPEAL.

(Am. Pet., Page ID ##99, 101, 103-04, 106, docket #2.) Respondent filed an answer to the amended petition (docket #12) stating that the grounds should be denied because they are without merit or procedurally defaulted. Petitioner filed a response (docket #26) to Respondent's answer. Upon review and applying the Antiterrorism and Effective Death Penalty Act standards, I find that Petitioner's grounds for habeas corpus relief are without merit. Accordingly, I recommend that the amended petition be denied.

## Procedural History

### A.    Trial Court Proceedings

The state prosecution arose from a drug bust in Muskegon on August 29, 2003, in which Petitioner, who is also known as "Flip," allegedly agreed to purchase eighteen ounces of cocaine from an undercover police officer. While searching Petitioner's apartment several hours later pursuant to a search warrant, the police discovered a handgun that supposedly belonged to Petitioner. Petitioner was charged with possession with intent to deliver 450 grams or more but less than 1,000 grams of cocaine, possession of a firearm by a person convicted of a felony and possession of a firearm during the commission of a felony (felony-firearm). (Jan. 21, 2004 Trial Tr. Vol. I (Tr. I), 50-51, docket #17.)

Petitioner was tried before a jury beginning January 21, 2004, and concluding on January 23, 2004. Muskegon Heights Police Detective Calvin Davis testified that he was assigned to the West Michigan Enforcement Team (WEMET) in August 2003. (Jan. 22, 2004 Trial Tr. Vol. II (Tr. II), 32, docket #18.) On August 26, 2003, Detective Davis pulled over a vehicle driven by Ricardo Ortiz. (Tr. II, 32-34.) Detective Davis confiscated three plastic bags and a cell phone from Ortiz. (Tr. II, 34-36.) Detective Davis testified that he did not search Ortiz's car. (Tr. II, 35.) During Detective Davis's interview with Ortiz at the police station, he noted that Ortiz's cell phone rang once. (Tr. II, 37.)

City of Muskegon Police Officer Scott Vanderwier testified that he was assigned to WEMET in August 2003. Officer Vanderwier participated in Ricardo Ortiz's traffic stop on August 26, 2003. Officer Vanderwier corroborated Detective Calvin Davis's testimony regarding the traffic

stop. (Tr. II, 39-41.) Officer Vanderwier found three plastic bags containing a white substance on Ortiz and approximately one ounce of a white substance in the car. (Tr. II, 40-41.)

The trial court admitted an analysis of the substance taken from Ricardo Ortiz and his car, which tested positive for cocaine. (Tr. II, 109.)

City of Muskegon Police Detective Thomas Parker testified that he participated in the arrest of Ricardo Ortiz on August 26, 2003. He interviewed Ortiz with Detective Calvin Davis at the police station. (Tr. II, 129.) While Detective Parker was interviewing Ortiz, Ortiz's cell phone rang. When Detective Parker picked up the phone, he flipped it open and the name "Flip" came up on the caller ID. (Tr. II, 131.) Detective Parker knew Flip to be Petitioner. A few minutes later, Detective Parker stepped out of the interview to call Flip. When he dialed Flip's number, a gentleman answered, "What's up?" (Tr. II, 132.) Detective Parker answered, "Not much." (Tr. II, 132.) Flip said, "Are you straight?" (Tr. II, 132.) Detective Parker testified that "Are you straight" means do you have any cocaine? (Tr. II, 132.) Detective Parker answered "Yes, I'm straight." (Tr. II, 133.) Flip replied, "All right. I'll be ready for the usual tomorrow." (Tr. II, 133.) Detective Parker stated, "Yeah, I'm straight, but I'll call you tomorrow." (Tr. II, 133.)

Detective Parker returned Flip's call two days later. (Tr. II, 134.) When he called Flip, Detective Parker said, "Is this Flip?" (Tr. II, 134.) Flip answered, "This is Flip . . . Who's this?" (Tr. II, 134.) Detective Parker replied, "This is Chewy, Ricardo's boy." (Tr. II, 134.) When Flip asked where Ricardo was, Detective Parker explained that Ricardo was in jail. Flip acknowledged that he knew that Ricardo was in jail. (Tr. II, 134.) Flip stated, "Ricardo's wife stopped by my house today to get some money that I had owed Ricardo, $700 to pay for the car that WEMET had seized from Ortiz." (Tr. II, 134-35.) Flip then mentioned that Ricardo's wife told him

that the police had taken Ricardo's phone and he should change his number immediately. Detective

Parker said that the police did not take the phone because it was his phone. (Tr. II, 135.) "Ricardo

works for me. That phone's mine. The police can't take my phone." (Tr. II, 136.)

   Eventually, Detective Parker asked whether Flip wanted to buy some cocaine. Flip

replied, "I want 18, 18 ounces." (Tr. II, 136.) Detective Parker initially said "No." (Tr. II, 136.)

He then asked what Ricardo Ortiz was giving Flip. "Ricardo was giving me 9 at 600 apiece [sic]."

(Tr. II, 137.) Detective Parker testified that he told Flip that he would sell it for 5. Flip, however,

reiterated that he wanted 18. Detective Parker asked, "You can move 18?" (Tr. II, 137.) Flip

answered, "Yes." (Tr. II, 137.) Detective Parker told him that he wanted the money by Friday. Flip

replied, "I'll have your money." (Tr. II, 137.) Detective Parker testified that he requested collateral

because he was going to sell Flip 18 ounces of cocaine at $500/ounce for $9,000. Flip stated that

he could give him $2,000 and a 1970 Buick Riviera as collateral. (Tr. II, 137.)

   On August 28, 2003, Ricardo Ortiz's phone rang again. It was Flip. (Tr. II, 138-39.)

Detective Parker waited a couple minutes and then called Flip back. (Tr. II, 139.) During that taped

conversation, they reiterated the terms of the transaction: 18 ounces for $2000 now and the collateral

of the Buick Riviera. (Tr. II, 141, 144.) Flip would have the rest of the money by the following

week. Detective Parker arranged a meeting. (Tr. II, 141.) Detective Parker asked again, "I want

to make sure you can move 18 and not 9. You know, I can do 9. If you can't get money for 18[,]

I can do 9." (Tr. II, 143.) Flip replied, "Give me whatever you're comfortable with, you know what

I'm saying." (Tr. II, 143.) Detective Parker said, "Well, if you can get the money[,] I'm

comfortable with 18. I want to get rid of it, you know." (Tr. II, 143.)

Detective Parker called Flip one more time before their meeting to move the time up. Detective Parker had the cocaine so he did not want to wait any longer. (Tr. II, 145.) Detective Parker, however, knew that Flip would not have time to get $2,000 if they moved up the meeting. (Tr. II, 146.) Detective Parker arranged for Flip to meet him at 1:00 a.m. at Walmart. Detective Parker would take Flip's car in exchange for the cocaine. (Tr. II, 147.)

Next, Detective Parker testified regarding the events at the meeting. Detective Parker waited for Flip at the Walmart parking lot. At approximately 1:00 a.m., Flip arrived in a white Buick Riviera. (Tr. II, 152.) After he parked, Detective Parker got out of his car and looked over the Buick. Detective Parker said, "You Flip?" (Tr. II, 154.) He replied, "Yeah." (Tr. II, 154.) Detective Parker mentioned that the car would work for the exchange. Flip then exited his car and sat in Detective Parker's front passenger seat. Detective Parker retrieved a McDonald's bag from a hidden compartment in the dashboard and placed it in front of Flip. (Tr. II, 155-56.) Flip grabbed the bag from Detective Parker and put the bag in his lap. (Tr. II, 155, 159.) The bag contained 18 ounces of cocaine obtained from the Michigan State Police's inventory. The cocaine had been broken up into one ounce bags for a total of eighteen bags. (Tr. II, 157-58, 160.) Detective Parker instructed Flip to "check it out." (Tr. II, 160.) Flip answered, "I'll check it out when I get to where I'm going." (Tr. II, 160.) Detective Parker replied: "No, man. Check it out and make sure you [k]now it[']s in there. I don't want to be ripping [] anybody off. I want you to know there's 18 ounces in there and, you know, make sure you like it and it looks like something you like." (Tr. II, 160.) Flip then opened the bag, looked in the bag and pulled out three ounces. Flip fumbled through the three ounces. Flip mentioned that "it doesn't look the same." (Tr. II, 160.) Detective Parker testified that Flip thought the color was different. The WEMET officers then moved in to arrest

Flip. (Tr. II, 161.) Detective Parker testified that Flip never said that he wanted to back out of the deal. When WEMET pulled Flip out of the car, two bags fell on the floor and one bag fell out of the car. (Tr. II, 161-62.)

Muskegon County Sheriff's Department Deputy John Yax was assigned to WEMET on August 29, 2003 for surveillance of a Buick at an apartment complex in Muskegon. (Tr. II, 47-48, 50.) Around midnight, Deputy Yax noticed a person leave apartment number 202, get into the Buick and drive the car straight to the parking lot of Walmart. Yax followed the car to the Walmart parking lot. (Tr. II, 51.)

Michigan State Police Detective Lieutenant Dale Young testified that he was a team supervisor for WEMET. WEMET was a drug team comprised of officers from different police departments from the Muskegon County area. (Tr. II, 65.) Lieutenant Young testified that WEMET had a reverse buy policy where a police agency may deliver drugs to a suspect to buy. (Tr. II, 66.) After delivering the narcotics, the suspect would be arrested and the drugs would not be allowed to leave the scene. (Tr. II, 68.) Lieutenant Young testified that he was in a surveillance car at the Walmart parking lot. (Tr. II, 71-72.) Young stated that he observed Petitioner's car pull up near Detective Thomas Parker's car. (Tr. II, 72.) Detective Parker got out of his car and walked around the Buick. Petitioner then exited his car and they both got into Detective Parker's car. (Tr. II, 73.) At some point, the bust signal was given and Lieutenant Young moved in to apprehend Petitioner. Petitioner was sitting in the passenger seat of the undercover car. (Tr. II, 74-75.) As Young approached Petitioner, he observed a McDonald's bag in Petitioner's lap and something in Petitioner's hand. Young opened the car door and Detective Charles Anderson pulled Petitioner out of the car. Lieutenant Young testified that he noticed one clear plastic bag with a white substance

fall off of Petitioner and one clear plastic bag with a white substance fall onto the ground. (Tr. II, 77-78.) Lieutenant Young also noticed a McDonald's bag in the car. (Tr. II, 78.)

The WEMET team also applied for a search warrant for Petitioner's apartment. (Tr. II, 79.) Lieutenant Young testified that he helped search the apartment. (Tr. II, 86.) In one of the bedrooms with male clothing, Lieutenant Young found a couple of shoe boxes under the bed. (Tr. II, 87, 90.) One shoe box contained a small silver handgun and another shoe box contained a Sunbeam digital scale. (Tr. II, 87, 89.) Based on Lieutenant Young's experience, he has found those scales are used to weigh narcotics. In the shoe box with the gun, Lieutenant Young found a greeting card with the word "Flip" on the card. (Tr. II, 87-88.)

The parties stipulated that Petitioner was convicted of a prior felony. (Tr. II, 107.) The trial court also admitted the Michigan State Police Lab Report that the handgun was tested for latent prints but the results were inconclusive. (Tr. II, 109.)

Detective Charles Anderson testified that he was a part of the WEMET team located in the Walmart parking lot. When he received the bust signal, Detective Dale Young opened the undercover car's door and Detective Anderson grabbed Petitioner from the undercover car. (Tr. II, 112-13.) Detective Anderson testified that when he got up to the window of the undercover car, he noticed that Petitioner had a clear plastic bag in his lap. Detective Anderson testified that a food bag was either in Petitioner's lap or next to his seat. Detective Anderson then arrested Petitioner. (Tr. II, 113.)

Detective Anderson also assisted with the search of Petitioner's apartment. Anderson found several clear plastic bags on a shelf in the food pantry. (Tr. II, 114.) In one of the plastic bags, Anderson found a measuring cup with what appeared to be cocaine residue. (Tr. II, 115.)

The prosecution recalled Detective Scott Vanderwier to testify. Detective Vanderwier testified that he was part of the surveillance team for Petitioner. While Vanderwier did not witness Petitioner leave the apartment or enter the Buick, he saw the Buick exit the apartment complex. (Tr. II, 121.) Detective Vanderwier followed the Buick to the Walmart parking lot. Vanderwier was also in charge of the evidence at Petitioner's apartment. (Tr. II, 122.) He seized a gun, a scale and a measuring cup from the apartment. (Tr. II, 123.) In a cupboard, Detective Vanderwier recovered a June 12, 2003 patient statement that was addressed to Petitioner at the address of the apartment. He also found a cell phone charger on the kitchen table. (Tr. II, 124.) Petitioner's cell phone was seized at another location but Detective Vanderwier found that the cell phone and the charger went together. (Tr. II, 125.)

Michigan State Police Detective Sergeant Jeff Crump testified as an expert in firearms. (Jan. 23, 2004 Trial Tr. Vol. III (Tr. III), 4, docket #19.) Sergeant Crump found that the recovered firearm was inoperable. Sergeant Crump described the gun as a 22 magnum caliber. (Tr. III, 7.)

Michigan State Police Detective Sergeant Doug Westrate testified as an expert in fingerprint identification. (Tr. III, 12.) Sergeant Westrate testified that he had a record of Petitioner's fingerprints. (Tr. III, 13.) Sergeant Westrate processed the scale that was recovered for fingerprints. He compared a photograph of a fingerprint taken from the side of a digital scale with Petitioner's fingerprint. Sergeant Westrate testified that the fingerprint on the scale matched the right thumb of Petitioner. (Tr. III, 16.) Sergeant Westrate also examined a nine-volt battery from the scale for fingerprints. He found a fingerprint on the battery but he could not match it with Petitioner's fingerprints. (Tr. III, 17.) Sergeant Westrate testified that he could not eliminate

Petitioner as a match because it was possible that the fingerprint came from an area of the hand that would not have been recorded on a fingerprint card. (Tr. III, 18.) Sergeant Westrate also processed the measuring cup that was recovered for any fingerprints. He did not find any fingerprints on the measuring cup that could be processed. (Tr. III, 17.)

Michigan State Police forensic scientist William Ruhf testified as an expert in drug analysis and identification. (Tr. III, 22-24.) Ruhf received the eighteen bags that were recovered from the drug bust. Ruhf inventoried all of the eighteen bags, weighed the substance in each of the bags and tested all of the material for controlled substances. (Tr. III, 24-27.) Ruhf found the presence of cocaine in all eighteen of the bags. Ruhf testified that the total weight of the cocaine in the eighteen bags was 496.7 grams. (Tr. III, 26-28.)

Ruhf also obtained 0.066 grams of white powder from the measuring cup. After testing the powder, Ruhf concluded that it contained the presence of cocaine. (Tr. III, 31-32.) Ruhf further tested residue obtained from the Sunbeam electronic scale. He found that the residue from the scale contained the presence of cocaine. (Tr. III, 33.)

At the conclusion of the trial, on January 23, 2004, the jury found Petitioner guilty of possession with intent to deliver 450 grams or more but less than 1,000 grams of cocaine and of possession of a firearm by a person convicted of a felony. The jury, however, found Petitioner not guilty of the felony-firearm charge. (Tr. III, 126-27.)

On February 17, 2004, Petitioner was sentenced to prison terms of 17 to 45 years for the conviction of possession with intent to deliver 450 grams or more but less than 1,000 grams of cocaine and 18 months to 10 years for the conviction of possession of a firearm by a person convicted of a felony. (Feb. 17, 2004 Sentencing Tr., 13, docket #20.)

**B.      Direct Appeal**

Petitioner appealed as of right to the Michigan Court of Appeals.  His brief on appeal

raised the following two claims:

> I.      [PETITIONER'S] CONVICTION ON COUNT I SHOULD BE REVERSED
> BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND HE
> POSSESSED THE QUANTITY ALLEGED; ALTERNATIVELY THE
> COURT ERRED IN DENYING THE MOTION FOR A DIRECTED
> VERDICT.
>
> II.     [PETITIONER'S] CONVICTION ON THE COUNT OF FELON-IN-
> POSSESSION OF A FIREARM SHOULD BE REVERSED BECAUSE
> THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THIS
> OFFENSE.

(See Appellant's Br. on Appeal, docket #22.)  Petitioner also filed a supplemental brief on appeal

raising the following issue:

> III.    [PETITIONER'S] CONVICTION MUST BE REVERSED BECAUSE
> [PETITIONER] NEVER ACTUALLY POSSESSED ANY OF THE
> COCAINE BECAUSE HE WAS INSPECTING THE DRUGS WHEN THE
> SIGNAL WAS GIVEN TO ARREST [PETITIONER], THEREFORE
> [PETITIONER] NEVER AGREED TO PURCHASE [']ANY['] OF THE
> AMOUNT ALLEGED BY THE STATE OF MICHIGAN, THE EVIDENCE
> IS INSUFFICIENT TO PROVE GUILT BEYOND A REASONABLE
> DOUBT UNDER THE MICHIGAN AND FEDERAL CONSTITUTION.

(See Def.-Appellant's Supplemental Br., docket #22.)  By unpublished opinion issued on May 12,

2005, the Michigan Court of Appeals rejected all appellate arguments and affirmed Petitioner's

convictions and sentences.  (See May 12, 2005 Mich. Ct. App. Opinion (MCOA Op.), docket #21.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme

Court.  Petitioner raised the following two claims:

> I.      [PETITIONER'S] CONVICTION MUST BE REVERSED BECAUSE
> [PETITIONER] NEVER ACTUALLY OR CONSTRUCTIVELY
> POSSESSED ANY NARCOTICS BECAUSE HE WAS INSPECTING THE

DRUGS WHEN THE SIGNAL WAS GIVEN TO ARREST [PETITIONER,] THEREFORE [PETITIONER] NEVER AGREED TO PURCHASE 'ANY' COCAINE, FURTHER THE EVIDENCE WAS INSUFFICIENT TO PROVE [PETITIONER] INTENDED TO DELIVER THE COCAINE, [PETITIONER]'S CONVICTION CONSTITUTES A FOURTEENTH AMENDMENT VIOLATION UNDER THE MICHIGAN AND UNITED STATES CONSTITUTION[S], AND THE COURT OF APPEALS['] DECISION WAS CONTRARY TO MICHIGAN AND UNITED STATES SUPREME COURT PRECEDENT.

II.     [PETITIONER'S] CONVICTION ON THE COUNT OF FELON-IN-POSSESSION OF A FIREARM SHOULD BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THIS OFFENSE, AND THE COURT OF APPEALS['] DECISION WAS CONTRARY TO MICHIGAN AND UNITED STATES SUPREME COURT PRECEDENT.

(See Appl. for Leave to Appeal, docket #22.)  By order entered October 31, 2005, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (See Oct. 31, 2005 Mich. Order, docket #22.)

### C.     Post-conviction relief

Petitioner filed a motion for relief from judgment in the Muskegon County Circuit raising the following three issues:

I.      WAS [PETITIONER] [] DENIED A FAIR TRIAL IN THE JOINING OF THREE SEPARATE AND UNCONNECTED CASES?

II.     WAS [PETITIONER] DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO SEEK SUPPRESSION OF OTHER ACTS['] EVIDENCE AND FAILED TO MOVE FOR SEVERANCE OF THE CHARGES PURSUANT TO MCR 6.120(B)?

III.    WAS [PETITIONER] DEPRIVED [OF] THE EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL WHEN APPELLATE COUNSEL FAILED, AFTER READING THE RECORD, TO RAISE ISSUES THAT WERE BOTH "OBVIOUS AND SIGNIFICANT" FOR NO APPARENT STRATEGIC PURPOSE?

(See Def.-Appellant's Br., docket #23.)  On November 22, 2006, the Muskegon County Circuit Court denied Petitioner's motion because Petitioner failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  (Nov. 22, 2006 Op. & Order, docket #23.)

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals, raising the three issues in his motion for relief from judgment.  On December 12, 2007, the Michigan Court of Appeals denied leave to appeal on the grounds that Petitioner had failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  (Dec. 12, 2007 Mich. Court of Appeals' Order, docket #23.)  The Michigan Supreme Court denied leave to appeal for the same reason on July 29, 2008.  (July 29, 2008 Mich. Order, docket #24.)

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943. However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir.

1989).  Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

I.     Sufficiency of the Evidence: Grounds I and II

In his first and second grounds for habeas corpus relief, Petitioner claims that he is entitled to habeas relief because the prosecutor presented insufficient evidence to support his convictions of possession with intent to deliver 450 grams or more but less than 1,000 grams of cocaine and of felon in possession of a firearm.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-197 (6th Cir. 1988).

### A.     Drug Conviction:  Ground I

For his conviction of possession with intent to deliver 450 grams or more but less than 1,000 grams of cocaine,  MICH. COMP. LAWS § 333.7401(2)(a)(ii), Petitioner argues that he did

not actually or constructively possess the cocaine. The elements of MICH. COMP. LAWS § 333.7401(2)(a)(ii) are: (1) the defendant knowingly possessed cocaine; (2) the defendant intended to deliver cocaine to someone else; (3) the substance possessed was actually cocaine and the defendant must have known it was cocaine; and (4) the substance weighed 450 grams or more but less than 1,000 grams. *See People v. Wolfe*, 489 N.W.2d 748, 752 (Mich. 1992). Possession may be either actual or constructive, and may be joint or exclusive. *Id.* at 753. Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance. *Id.* at 754. The controlling question is whether the defendant had dominion or control over the controlled substance. *People v. Konrad*, 536 N.W.2d 517, 521 (Mich. 1995). Circumstantial evidence and reasonable inferences arising from the evidence may suffice to establish possession. *People v. Fetterley*, 583 N.W.2d 199, 202 (Mich. Ct. App. 1998). Possession may be found even when the defendant is not the owner of the recovered narcotics. *Wolfe*, 489 N.W.2d at 753.

In rejecting Petitioner's claim, the Michigan Court of Appeals stated:

On appeal, defendant first argues that the evidence at trial was insufficient to support that he possessed between 450 and 1000 grams of cocaine, as required for conviction under MCL 333.7401(2)(a)(ii). We disagree. Challenges to the sufficiency of the evidence in criminal trials are reviewed de novo to determine whether, when viewed in a light most favorable to the prosecutor, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Randolph*, 466 Mich 532, 572; 648 NW2d 164 (2002).

In challenging the sufficiency of evidence to support his conviction, defendant argues that the evidence at trial showed that he was in possession of no more than three ounces (approximately 85 grams) of cocaine at the time of his arrest. In making this argument, defendant relies on the testimony of the arresting officer, who indicated that at the time defendant was taken into custody the paper sack containing the remaining fifteen ounces of cocaine was located on the console of the vehicle. However, it is well established that "[a] person need not have actual physical possession of a controlled substance to be guilty of possessing it." *People*

- 17 -

*v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992). To the contrary, the offense of possession of a controlled substance merely requires a showing of power and intention to exercise dominion or control over the controlled substance, with knowledge of its presence and character. *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003); see also, e.g., *People v Burgenmeyer*, 461 Mich 431, 439 n 12; 606 NW2d 645 (2000). As such, possession may be either actual or constructive. *Id.* at 166. Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance. *Wolfe, supra* at 521. "Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance." *Id.* at 520.

Here, viewing the evidence in a light most favorable to the prosecution, we conclude that the evidence was sufficient to support that defendant possessed the entire eighteen ounces of cocaine at the time of his arrest. Although the testimony cited by defendant suggests that he physically possessed only three ounces of cocaine at that time, the totality of the circumstances indicates a sufficient nexus between defendant and the remaining fifteen ounces. *McKinney, supra.* Indeed, defendant was not merely present in the car where the cocaine was located, but rather, was present for the express and previously agreed purpose of purchasing the eighteen ounces of cocaine actually handed to him while inside the car. Although defendant is correct that the undercover officer who provided him this contraband acknowledged at trial that he did not intend to permit defendant to leave the vehicle with the cocaine and, thus, remained in control of that substance, that fact does not preclude a finding that defendant also held the right to exercise dominion and control over the cocaine. As previously noted, "possession may be joint, with more that one person actually or constructively possessing a controlled substance." *Wolfe, supra*. Here, defendant was provided the opportunity to exercise such control, which he accepted by knowingly receiving the contraband from the officer. Consequently, we find that the evidence was sufficient to permit a rational trier of fact to conclude beyond a reasonable doubt that defendant possessed the entire eighteen ounces of cocaine. *Randolph, supra*.

In reaching this conclusion, we reject defendant's contention that a conviction for possessing a controlled substance arising from a "reverse buy" requires some act of assent to the transaction beyond mere inspection of the contraband. The cases on which defendant relies as support for this proposition, although each involving a completed sale and attempt to transport the contraband away from the site of the transaction, do not require such acts for a valid conviction. Rather, as noted above, all that is required for a conviction of possessing a controlled substance is a showing of power and intention to exercise dominion or control over the controlled substance with knowledge of its presence and character. *McKinney, supra*. Here, defendant does not dispute that he was aware of the presence and

character of the substance at issue, of which we have already determined defendant exercised sufficient dominion and control to support his conviction.

(MCOA Op. at 1-2.)  The appellate court's decision is entitled to deference unless that decision was contrary to or an unreasonable application of the Supreme Court's decision in *Jackson*.

The prosecution provided ample evidence to convict Petitioner of possession with intent to deliver 450 grams or more but less than 1,000 grams of cocaine.  Petitioner agreed to purchase eighteen ounces of cocaine for $9,000 from Detective Thomas Parker, an undercover police officer.  Because Petitioner did not have $9,000 in cash, Detective Parker was going to hold Petitioner's Buick Riviera as collateral until Petitioner paid $9,000.  At a meeting in a Walmart parking lot, Detective Parker and Petitioner sat in the undercover police car to complete the exchange.  Detective Parker retrieved a McDonald's bag from the dashboard and put it in front of Petitioner.  (Tr II, 155-56.)  Petitioner grabbed the bag from Detective Parker and placed it in his lap.  (Tr. II, 155, 159 (Detective Parker); Tr. II, 77-78 (Detective Dale Young).)  The McDonald's bag contained eighteen clear bags with approximately an ounce of cocaine in each bag.  After a few moments, Detective Parker told Petitioner to check the cocaine out.  " I want you to know there's 18 ounces in there and, you know, make sure you like it and it looks like something you like."  (Tr. II, 160.)  Petitioner opened the bag, looked in the bag and pulled out three ounces.  (Tr. II, 160.) Petitioner inspected the three ounces and questioned its color.  (Tr. II, 161.)  Because Petitioner had dominion and control over the fifteen ounces of cocaine in the McDonald's bag in his lap and the three ounces in his hand, a rational jury could conclude that Petitioner had actual possession over the eighteen ounces of cocaine.[2]

---

[2]In its opinion, the Michigan Court of Appeals' considered Petitioner's argument that the arresting officer found the food bag on the console inside the car. (MCOA Op. at 2.)  The arresting officer, Detective Charles Anderson, however, testified that the food bag was *either* in Petitioner's lap or next to his seat.  (Tr. II, 113.)  Detectives Thomas

The Michigan Court of Appeals found that Petitioner had actual possession of the three ounces in Petitioner's hand and constructive possession of the remaining fifteen ounces of cocaine in the McDonald's bag. (MCOA Op. at 2.) Even if Petitioner did not actually possess the fifteen ounces of cocaine in the McDonald's bag, he constructively possessed those fifteen ounces. The totality of the circumstances show that Petitioner intended to exercise dominion and control over the drugs. The purpose behind the meeting was for Petitioner to buy cocaine. The drugs were located in close proximity to Petitioner in the car. Petitioner also inspected the cocaine to determine whether the drugs were acceptable. A rational jury therefore could conclude that Petitioner had constructive possession over the fifteen ounces of cocaine in the McDonald's bag.

In his brief in support of his amended application for habeas corpus relief, Petitioner argues that Detective Parker was in control of the situation and Parker was never going to let Petitioner leave with the cocaine. (Pet'r's Br. in Support, Page ID #25, docket #2; Pet'r's Second Br. in Support, Page ID #128, 130, docket #9.) Possession may be joint. *Wolfe*, 489 N.W.2d at 753. The fact that Detective Parker was not going to let Petitioner take the cocaine does not diminish the fact that Petitioner exercised possession over the cocaine. As the Michigan Court of Appeals' found, both Petitioner and Detective Parker could possess the cocaine. (MCOA Op. at 2.) Further, Petitioner could still possess the cocaine even though he did not own the cocaine. *See Wolfe*, 489 N.W.2d at 753.

---

Parker and Dale Young testified that the McDonald's bag was in Petitioner's lap. (Tr. II, 155, 159 (Detective Parker); Tr. II, 77-78 (Detective Dale Young).) As the *Jackson* Court recognized, the resolution of conflicting evidence and the assessment of witness credibility is reserved for the jury. *See Jackson*, 443 U.S. at 319. The jury could have found that Petitioner actually possessed the cocaine based on the testimony of Detectives Parker and Young. Regardless of whether Petitioner possessed the cocaine actually or constructively, the jury ultimately found that Petitioner possessed the cocaine for his conviction.

The remaining elements for possession with intent to deliver between 450 and 1,000 grams are also satisfied. After testing the substance, William Ruhf testified that the substance was cocaine. He also found that the cocaine weighed 496.7 grams. (Tr. III, 26-28.) Moreover, Petitioner knew the substance was cocaine and he intended to deliver the cocaine. Petitioner indicated several times to Detective Parker that he intended to sell eighteen ounces of cocaine, which was more than his "usual" buy of nine ounces. (Tr. II, 136-37.) Furthermore, several of the items that were recovered at Petitioner's apartment, including the plastic bags, the measuring cup, the scale and the gun, are typical drug paraphernalia used by dealers. Accordingly, there was sufficient evidence to convict Petitioner of possession with intent to deliver 450 grams or more but less than 1,000 grams of a controlled substance. Petitioner therefore is not entitled to habeas relief on this claim because the Michigan Court of Appeals's decision was neither contrary to nor an unreasonable application of *Jackson.*

### B.      Firearm Conviction: Ground II

Petitioner argues that there was insufficient evidence to convict him of being a felon in possession of a firearm. The elements of felon in possession of a firearm are: (1) the defendant possessed a firearm, (2) the defendant was previously convicted of a felony, and (3) the defendant's right to possess a firearm had not yet been restored. MICH. COMP. LAWS § 750.224f; *People v. Perkins,* 686 N.W.2d 237, 239-40 (Mich. Ct. App. 2004). Possession of a firearm under this statute, can be actual or constructive and can be proven by circumstantial evidence. *People v. Hill,* 446 N.W.2d 140, 143 (Mich. 1989). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Id.* At trial, the parties stipulated to the fact that Petitioner had been previously convicted of a felony. (Tr. II, 107.)

Petitioner also does not argue that his right to possess a firearm had not yet been restored. Therefore, the only issue is whether Petitioner possessed the handgun. (Pet'r's Br. in Support, Page ID #28, docket #2; Pet'r's Second Br. in Support, Page ID #132, docket #9.)

The Michigan Court of Appeals rejected Petitioner's claim as follows:

Defendant also argues that the evidence at trial was insufficient to support that he possessed the firearm found during the search of his apartment. Again, we disagree.

As with possession of a controlled substance, possession of a firearm may be actual or constructive and may be proved by circumstantial evidence. See *People v Hill*, 433 Mich 464, 469-471; 446 NW2d 140 (1989). A defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant. *Id.* at 470-471. Here, defendant does not dispute that the handgun found in a box underneath his bed was readily accessible to him. Defendant contends only that the evidence at trial was insufficient to support that he had knowledge of the presence of the handgun within that box. However, in addition to containing the handgun, the box at issue contained a greeting card addressed to defendant. Moreover, a second box containing a digital scale on which cocaine residue and defendant's fingerprints were detected was found next to the box containing the handgun and greeting card. Such evidence, although circumstantial, was sufficient to support a rational trier of fact in concluding that defendant had knowledge of the contents of those boxes, including the firearm at issue. *Rudolph*, *supra*.

(MCOA Op. at 3.)

The Michigan Court of Appeals held that Petitioner had constructive possession of the firearm because it was known and readily accessible by Petitioner. First, there was significant circumstantial evidence that the gun was known to Petitioner. Because the police found a medical bill addressed to Petitioner and a cell phone charger that fit Petitioner's cell phone at the apartment, it is reasonable to conclude that Petitioner was present at the apartment. In a bedroom containing male clothing, the police located two shoe boxes under the bed. One shoe box contained the gun and a greeting card. The greeting card was addressed to "Flip." (Tr. II, 87-88.) "Flip" is

Petitioner's nickname. The second shoe box contained a scale, which was found to have Petitioner's fingerprints. (Tr. II, 87, 89.) With the evidence of the greeting card addressed to "Flip" and Petitioner's fingerprints on the scale, which was in close proximity to the shoe box with the gun, a jury could reasonably find that the firearm was known to Petitioner.

Second, the Michigan Court of Appeals found that Petitioner did not dispute that the gun was readily accessible to him. The issue of whether a firearm is readily accessible is a question of fact. *People v. Lamp,* No. 221040, 2001 WL 703957, at *4 (Mich. Ct. App. Mar. 23, 2001). Findings of fact are presumed to be correct and a petitioner must present clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Petitioner has not presented any clear and convincing evidence to rebut the presumption. In his reply brief, Petitioner only challenges whether he actually lived or resided in the apartment where the weapon was found. (Pet'r's Reply, Page ID #201-02, docket #26.) Because the police found a medical bill addressed to Petitioner at the apartment, a cell phone charger that fit Petitioner's cell phone in the apartment and Petitioner's fingerprints on a scale under a bed in the apartment, it is reasonable to conclude that Petitioner was present at the apartment. Petitioner does not dispute that the weapon would be readily accessible to whomever stayed at the apartment.

Accordingly, the Michigan Court of Appeals decision was not an unreasonable application of the *Jackson* standard.

II.     Procedural Default:  Grounds III, IV and V

Petitioner raised his third ground for habeas corpus relief for improper joinder, fourth ground of habeas corpus relief for ineffective assistance of trial counsel and fifth ground for habeas

corpus relief for ineffective assistance of appellate counsel for the first time in his motion for relief from judgment.  Respondent contends that those issues are procedurally defaulted.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

Here, the Muskegon County Circuit Court, the Michigan Court of Appeals and the Michigan Supreme Court all expressly stated that they denied relief on Petitioner's motion for relief from judgment on the basis that Petitioner failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  Because MICH. CT. R. 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place well after, MICH. CT. R. 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action.  *See Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000); *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

In *Guilmette v. Howes*, ___ F.3d ___, 2010 WL 4117281 (6th Cir. Oct. 21, 2010), the Sixth Circuit, in an *en banc* decision, held that brief form orders by the Michigan appellate courts invoking MICH. CT. R. 6.508(D) are unexplained orders within the meaning of *Ylst*, 501 U.S. 797.

Such form orders are presumed to uphold or reject the last reasoned decision below. *Guilmette*, 2010 WL 4117281, at *4 (citing *Ylst*, 501 U.S. at 803). Because the trial court and the appellate courts relied on the procedural bar in this case, Petitioner's third and fourth grounds for habeas corpus relief are procedurally defaulted. However, the *Guilmette* court held that a claim of ineffective assistance of appellate counsel may not properly be deemed procedurally defaulted under MICH. CT. R. 6.508(D) when it was raised for the first time in a motion for relief from judgment under MICH. CT. R. 6.502. The court reasoned that "[t]he procedural-default rule stated by Rule 6.508(D)(3) applies only to claims that could have been brought on direct appeal, and thus – by necessity – it does not apply to claims of ineffective assistance of appellate counsel." *Guilmette*, 2010 WL 4117281, at *6. The *Guilmette* court therefore found that the invocation of Rule 6.508(D) in such circumstances must be considered a decision on the merits of the claim. Accordingly, Petitioner's fifth ground for habeas corpus relief for ineffective assistance of appellate counsel is not procedurally defaulted.

While Grounds III and IV are procedurally defaulted, the Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the claims on the merits, I need not decide whether Petitioner could show cause and prejudice for his default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). Accordingly, I will address the merits of Grounds III, IV and V.

### A.    Joinder: Ground III

In his third ground for habeas corpus relief, Petitioner claims that joining the possession with intent to deliver 450 or more but less than 1,000 grams of cocaine charge, the felon-in-possession-of-a-firearm charge and the felony-firearm charge in one trial violated his right to a fair trial.

The Supreme Court has not held that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him. *See Rodriguez v. Jones,* 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009). Rather, the United States Supreme Court has stated that "consolidation in one lawsuit of all issues rising out of a single transaction or occurrence best promotes justice, economy, and convenience." *Ashe v. Swenson,* 397 U.S. 436, 454 (1970) (Brennan, J., concurring). Joinder "has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." *Bellamy v. Bell*, No. 2:08-cv-14537, 2010 WL 3075003, at *10 (E.D. Mich. Aug. 5, 2010) (citing *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993)). For habeas review, the question is not whether the joinder of charges or the refusal to sever counts for separate trials violated a state procedural rule, but it is whether the petitioner was denied due process of law under the Fourteenth Amendment. *See Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (citing *Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980)). "Improper

joinder does not, in itself, violate the Constitution.  Rather, misjoinder [constitutes] a constitutional

violation only if it results in prejudice so great as to deny a defendant his . . . right to a fair trial."

*United States v. Lane*, 474 U.S. 438, 446 n.8 (1986); *Davis*, 475 F.3d at 777 (quoting *Lane*).  The

Sixth Circuit explained:

> Without question, a risk of undue prejudice exists whenever joinder of counts
> permits introduction of evidence of other crimes that would otherwise be
> inadmissible.  By allowing joinder of offenses, the possibility exists that a jury may
> use the evidence of one of the charged crimes to infer a general criminal disposition
> by the defendant; the jury also may confuse or cumulate the evidence of the various
> crimes charges. The prejudice that [the petitioner] must demonstrate, however, in
> order to justify a grant of a writ of habeas corpus is actual prejudice, not merely the
> potential for prejudice.

*Davis*, 475 F.3d at 777 (internal citations omitted).  A misjoinder results in actual prejudice when

it " 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Lane*, 474

U.S. at 449 (citations omitted); *see also United States v. Chavis*, 296 F.3d 450, 461 (6th Cir. 2002).

In applying this standard, the Court considers factors such as whether there is overwhelming

evidence of guilt, whether limiting instructions were given to the jury, and whether the evidence

pertaining to the misjoined counts would have been admissible in separate trials absent joinder.

*Lane*, 474 U.S. at 450; *Chavis*, 296 F.3d at 461.  In addition, "where it would not have been difficult

for the jury to compartmentalize and distinguish the evidence concerning the different offenses

charged," prejudicial joinder is unlikely.  *Cody,* 498 F.3d at 587 (quoting *Chavis*, 296 F.3d at 462).

Under Michigan law, severance is required for those offenses that are not related.

MICH. COURT R. 6.120(c).  Michigan Court Rule 6.120(b)(1) defines related offenses as those that

are based on the same conduct or transaction, a series of connected acts or a series of acts

constituting parts of a single scheme or plan.  Petitioner was arrested for possession of a controlled

subtance. The trial court then issued a search warrant at Petitioner's residence to recover any firearms and drug paraphernalia and records. (Tr. I, 6.) In accordance with that search warrant, a gun was discovered in Petitioner's apartment. Clearly, the gun was found pursuant to a series of connected events. Because Petitioner's offenses were related, severance of the charges would not have been required.

Even if there was an improper joinder of the offenses, Petitioner cannot establish actual prejudice. The evidence with respect to the drug conviction and the two firearm convictions was simple and distinct. Each involved separate incidents. The evidence related to the drug offense occurred at the Walmart parking lot prior to Petitioner's arrest. The evidence related to the firearm offenses occurred after Petitioner's arrest at his apartment pursuant to a search warrant. As such, it would not have been difficult for the jury to compartmentalize and distinguish the evidence concerning the drug offense and the two firearm offenses. *See Cody*, 498 F.3d at 587 (quoting *Chavis*, 296 F.3d at 462).

Joinder was also an efficient use of resources in Petitioner's trial. *See Ashe,* 397 U.S. at 454. Many of the prosecution witnesses participated in Petitioner's arrest and the subsequent search of his apartment. Therefore, consolidating the testimony of those witnesses in one trial promoted "justice, economy, and convenience." *See Ashe,* 397 U.S. at 454.

Further, the jury was unlikely to confuse the evidence of one charge with another charge. Jurors are "presumed capable of considering each count separately." *United States v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002). The jurors were instructed that the evidence of one crime does not determine Petitioner's guilt with respect to another crime. The trial court stated:

> The defendant is charged with three counts.  That is with crimes of possession with intent to deliver 450 grams or more but less than 1,000 grams of a mixture containing the controlled substance cocaine; felon in possession of a firearm and felony firearm.  These are separate crimes and the prosecution is charging that the defendant committed all three of them.  You must consider each crime separately in light of all the evidence in the case.  You may find the defendant not guilty, guilty of all three or any combination of these crimes or guilty of the less serious crime in count one.

(Tr. III, 111-12.)  The trial court's instructions minimized any potential prejudice by the joinder of the offenses.  *See Cody*, 498 F.3d at 587; *Chavis*, 296 F.3d at 461.  There is no reason to believe that the jury was unable to follow the trial court's instruction.  Jurors are presumed to "carefully follow instructions."  *Morgan v. Shirley*, 958 F.2d 662, 668 (6th Cir. 1992) (quoting *Francis v. Franklin*, 471 U.S. 307, 325 n.9 (1985)); *see also Spencer v. Texas*, 385 U.S. 554, 562 (1967).  In accordance with the jury instructions, the jury carefully evaluated the evidence on each count separately.  The jury convicted Petitioner on two of the counts but acquitted him of one count.  Finally, I previously concluded that there was ample evidence against Petitioner to support his convictions.  Therefore, Petitioner's habeas claim fails.

### B.  Ineffective Assistance of Counsel:  Ground IV

Petitioner argues that he received the ineffective assistance of counsel when trial counsel (1) failed to object to the joinder of the three charges, and (2) failed to suppress the evidence of the scale on the basis that the prosecution did not give notice of its intent to introduce the scale under Michigan Court Rule 404(b)(2). (Pet'r's Br. in Support, Page ID ##35, 36, docket #2; Pet'r's Second Br. in Support, Page ID #137, docket #9.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

First, Petitioner argues that trial counsel should have objected to the joinder of his charges. I previously concluded that Petitioner's charges were related, and, thus, did not require severance. Even if Petitioner's charges could have been severed, I found that Petitioner had not demonstrated actual prejudice. As a result, counsel's failure to object did not amount to ineffective assistance. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) (recognizing that an attorney's

failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007) (same). Accordingly, Petitioner's first ineffective assistance of counsel claim fails.

Second, Petitioner argues that he received the ineffective assistance of counsel when trial counsel failed to object to the admission of the scale on the basis that the prosecution did not give notice of its intent to introduce the scale under Michigan Rule of Evidence 404(b)(2). Pursuant to Michigan Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is admissible if the evidence is (1) offered for a proper purpose other than to prove the defendant's character or propensity to commit a crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice. *People v. VanderVliet*, 508 N.W.2d 114, 117 (Mich. 1993); *see also People v. Crawford*, 582 N.W.2d 785, 790 (Mich. 1998); *People v. Starr*, 577 N.W.2d 673, 676 (Mich. 1998). Michigan Rule of Evidence 404(b)(2) requires that the prosecution provide reasonable notice in advance of trial of the general nature and rationale for any such evidence it intends to introduce at trial.[3] The Michigan Court of Appeals has held that any objection to the admission of bad acts evidence based on a lack of pretrial notice would be futile when (1) the evidence was substantively admissible, (2) the defendant was not surprised by the introduction of the bad acts evidence, and (3) the defendant never articulated that, had pretrial notice been given, counsel would have taken a different course of action. *People v. Gordon,* No. 291745, 2010 WL 4259378, at *3 (Mich. Ct. App. Oct. 28, 2010) (rejecting claim that counsel was ineffective for failing to object to bad acts evidence based on lack of pretrial notice) (citing *People*

---

[3]The purpose of Michigan Rule of Evidence 404(b)(2) is (1) to force the prosecutor to identify and seek admission only of prior bad acts evidence that passes the relevancy threshold, (2) to allow the defendant the opportunity to object to the evidence, and (3) to facilitate a thoughtful ruling by the trial court. *See People v. Hawkins*, 628 N.W.2d 105, 113 (Mich. Ct. App. 2001).

*v. Hawkins,* 628 N.W.2d 105, 113 (Mich. Ct. App. 2001) and *People v. Dobek*, 732 N.W.2d 546, 567-69 (Mich. Ct. App. 2007)).

   The evidence of the scale was admissible under the three requirements of Michigan Rule of Evidence 404(b)(1). The scale was offered for a proper purpose. The scale was found in a shoe box next to the shoe box that contained the firearm under a bed in Petitioner's apartment. The scale, which had Petitioner's fingerprint, was circumstantial evidence regarding whether Petitioner had knowledge of the firearm. The scale had also been found with cocaine residue. The scale, as drug paraphernalia, was used to show that Petitioner intended to deliver the cocaine that was seized from the drug bust. Because the evidence of the scale was not used to prove Petitioner's character or propensity to commit the charged crimes, the scale was offered for a proper purpose under Michigan Rule of Evidence 404(b)(1). The scale was also relevant to determine certain elements of the charges of felon in possession of a firearm and of possession with intent to deliver between 450 and 1,000 grams of cocaine. The scale was evidence that Petitioner had knowledge of the gun in the apartment for felon in possession of a firearm and that Petitioner intended to deliver the cocaine for possession with intent to deliver between 450 and 1,000 grams of cocaine. Finally, the evidence of the scale was sufficiently probative to prove those elements of the offenses, and, thus, outweighed the danger of unfair prejudice.

   Furthermore, Petitioner has never claimed that he was surprised by the admission of the evidence. The evidence of the scale was introduced at the Preliminary Examination Hearing on September 12, 2003, approximately three months prior to the trial. (Sept. 12, 2003 Prelim. Examination Hr'g Tr., 28, docket #16.) *See People v. Green*, No. 279327, 2008 WL 5273516, at *3 (Mich. Ct. App. Dec. 18, 2008) (finding defendant could not claim surprise when the prosecutor

introduced the evidence at the preliminary examination). Petitioner's counsel also filed a motion to suppress evidence of the scale, gun and measuring cup in the trial court.[4] (Tr. I, 3-4.) The trial court denied the motion prior to the start of the trial. (Tr. I, 17-18.) Petitioner, therefore, had notice of the scale prior to the trial.

Finally, Petitioner has not provided any evidence that his trial counsel would have taken a different course of action by calling witnesses or introducing additional evidence if pretrial notice had been given.

Petitioner fails to satisfy both prongs of *Strickland*. It was not objectively unreasonable for counsel to fail to object to the other bad acts evidence based on a lack of pretrial notice. *See Gordon,* 2010 WL 4259378, at *3 (counsel was not ineffective for failing to object to bad acts evidence based on lack of pretrial notice when the objection would have been futile.) Counsel's failure to object was also unlikely to prejudice Petitioner. Counsel did object to the evidence, albeit in a pre-trial motion. No reason exits to believe that the added objection would have changed the result.

### C.     Ineffective Assistance of Appellate Counsel: Ground V

In his fifth ground for habeas corpus relief, Petitioner claims that his appellate attorney rendered ineffective assistance by failing to raise the issues from Petitioner's motion for relief from judgment on direct appeal.

---

[4]Petitioner argues that his trial counsel failed to file for a motion to suppress the scale. (Pet'r's Br. in Support, Page ID #36, docket #2; Pet'r's Second Br. in Support, Page ID #137, docket #9.) Petitioner is incorrect. According to the January 21, 2004 trial transcript, trial counsel filed a motion to suppress the scale, gun and measuring cup prior to Petitioner's trial. (Tr. I, 3-4.) The trial court denied the motion. (Tr. I, 17-18.)

As previously discussed, in reviewing a claim of ineffective assistance of counsel, this Court applies the two-part standard set forth in *Strickland*, 466 U.S. at 687-88: (1) whether counsel's performance fell below an objective standard of reasonableness; and (2) whether counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289.

I concluded above that the issues presented in Petitioner's motion for relief from judgment are without merit. Appellate counsel cannot be ineffective "for a failure to raise an issue that lacks merit." *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer*, 264 F.3d at 676). Petitioner therefore cannot demonstrate the ineffective assistance of appellate counsel. Consequently, Petitioner's habeas claim is without merit.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the amended habeas corpus petition be denied.

Date: January 24, 2011          /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).